# Wytheville

## Norfolk Truckers Exchange, Inc. v. Norfolk Southern Railroad Co.

### June 11, 1914.

#### Absent, Cardwell, J.

1. Carriers—*Carmack Amendment—Averment in Pleading.*—In an action against the initial carrier of goods to recover for their loss, where the facts shown in the evidence make it appear that the cause of the action came within the sphere of the "Carmack amendment" of the act of Congress relating to carriers, recovery may be had under said amendment, although the declaration declares as at common law and does not aver that any connecting carrier existed, or show any facts to allow the amendment to operate.

2. Carriers—*Carmack Amendment—Damages by Delay.*—The "Carmack amendment" which makes the initial carrier responsible for "loss or damage or injury to goods" is broad enough to cover a case of damage to the shipper by reason of delay.

3. Verdicts—*Evidence to Support—Case at Bar.*—In view of the established facts in the case at bar and the reasonable inferences to be drawn therefrom, it cannot be said that the jury were without evidence to support their conclusion that there had been unreasonable delay in the carriage and delivery of the goods for the value of which the action was brought, and that such delay was the cause of the consignee's refusal to accept them, nor can it be said that the verdict is a plain deviation from right and justice, hence it was error for the trial court to set aside the verdict.

4. Instructions—*Inviting Error.*—Where the only instructions given were asked for by the plaintiff in error, the jury could not have been misdirected to his prejudice.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*J. Edward Cole,* for the plaintiff in error.

*James G. Martin,* for the defendant in error.

Harrison, J., delivered the opinion of the court.

This action of trespass on the case was brought by the plaintiff in error against the Norfolk Southern Railroad Company to recover damages alleged to have been sustained in consequence of the failure of the defendant company to perform its duty as a common carrier of goods. There were two trials, the first resulting in a verdict in favor of the plaintiff for the sum of $640.25, with interest from July 1, 1912, which verdict was set aside on motion of the defendant railroad company and a new trial ordered. The second trial resulted in a verdict for the defendant, followed by the judgment in favor of the defendant which is complained of.

Looking to the proceedings on the first trial for the purpose of determining the propriety of the court's action in setting aside that verdict in favor of the plaintiff, we find that the declaration avers that the defendant was a common carrier from Herbert's, Virginia, to Johnstown, Pennsylvania, and that it received from the plaintiff one hundred and ninety-seven barrels of potatoes valued at $640.25, to be carried safely and with due and proper care, for a certain reasonable reward, from Herbert's, Va., to Johnstown, Pa.; that being such common carrier it had so negligently behaved and conducted itself in the premises, that by reason of its carelessness, negligence and default the potatoes were wholly lost.

The evidence shows that the plaintiff had an order from A. P. Donges, of Johnstown, Pa., for one carload

of potatoes at $3.25 per barrel, and that in fulfillment of such order he caused to be delivered to the defendant, at Herbert's, Va., 197 barrels of potatoes for shipment and delivery to A. P. Donges, at Johnstown, Pa. The defendant was the initial carrier, the potatoes being routed over other connecting lines. It further appears that the car of potatoes left Herbert's June 21, 1912, and that, in the usual course of transportation, it should have reached Johnstown not later than midnight of June 23, 1912. Nothing was heard from the shipment until July 2, 1912, when the plaintiff received notice from the Baltimore and Ohio Railroad Company, and the next day, July 3, from the Norfolk and Western Railroad Company. Both of these notices contained the information that the car of potatoes were refused by the consignee "on account of the price." The plaintiff immediately wired its representative to look after the car, and received in reply a message saying that the Baltimore and Ohio had already had the potatoes sold for $2.00 per barrel. Subsequently the Baltimore and Ohio railroad offered to pay the plaintiff $304.92 upon the surrender of the original bill of lading, which was declined and this suit brought against the defendant, the initial carrier, to recover the value of the potatoes at $3.25 per barrel, the price the consignee had agreed to pay, amounting to $640.25, the sum for which the jury gave its verdict.

The potatoes having been routed, necessarily, over several connecting lines to Johnstown, the plaintiff relied on the Act of Congress known as the "Carmack amendment" as giving it the right to enforce its claim against the initial carrier. It is, however, contended that the Carmack amendment could not be invoked because the declaration did not aver that any connecting carrier existed, or show any facts to allow the Carmack amendment to operate. It being contended that under a decla--

ration asserting a pure common law claim, a statutory liability under the Carmack amendment could not be enforced. This position is not tenable.

In *N. & W. Ry. Co.* v. *Dixie Tobacco Co.,* 111 Va. 813, 69 S. E. 1106, which was afterwards affirmed by the Supreme Court of the United States, the suit began with a warrant of a justice of the peace, which was in legal effect identical with the counts of the declaration before us, and yet the Carmack amendment was held to apply because the facts as shown in evidence made it appear that the cause of action came within the sphere of that statute.

It is further insisted that the Carmack amendment has no place in this case because it applies only when there has been loss, damage or injury to the goods.

We are of opinion that the amendment, which makes the initial carrier responsible for "loss or damage or injury to goods" is broad enough to cover a case of damage to the shipper by reason of delay. It would be a narrow construction of the statute to confine its operation to the actual loss of goods, or to their physical injury. The wrong for which the statute undertook to give a remedy was that done to the shipper, and if the shipper has suffered loss by reason of the negligent or unreasonable delay of the carrier in the performance of its contract, it is just the same as though the loss had resulted from a physical injury to the goods or from the actual loss or disappearance of specific articles.

This brings us to the merits of the controversy which is involved in the action of the court in setting aside the verdict of the jury.

After the plaintiff had submitted its evidence the defendant rested without introducing any evidence except a letter which is not material in this connection. The declaration does not allege specifically that there was de-

lay in transporting the potatoes, but we think its aver-ments were quite broad enough to admit of the plain-tiff's proof tending to show that unreasonable delay in the transportation of the potatoes was the negligence which caused it to suffer the loss complained of.

As the case went to the jury, it presented the question of fact, whether there had been unreasonable delay in the carriage and delivery of the potatoes, and whether such delay was the occasion of the refusal of the consignee to receive the potatoes ''on account of the price.''

As already seen, the evidence showed that in the usual course of transportation the shipment should have ar-rived at Johnstown not later than midnight of June 23, 1912. The jury had before them the established fact that the notice sent by the Baltimore and Ohio, the last car-rier, to the consignor, announcing the arrival of the car, was dated July 1, 1912. It was the duty of the carrier to notify the consignor with reasonable promptness of the refusal of the consignee to accept the goods, and it is to be presumed that in this respect the carrier performed its duty. If it did, the date of its notice clearly shows that the shipment arrived at Johnstown eight days later than it should have done. It further appears that on the day following the shipment in question, the consignor shipped a car of like potatoes to New York which were promptly delivered, the same agreed price of $3.25 per barrel being received for them, showing that where the potatoes were delivered promptly there was, in New York at least, no objection made to receiving them on ac-count of the price. As already seen, the only reason given by the defendant in its notice to the plaintiff for the refusal of the consignee to accept the potatoes was ''on account of the price.'' Without further explanation this could readily have been interpreted to mean that the potatoes, eight days after they should have been de-

livered, were rejected on account of the then market price, for it is not denied that the agreed price was $3.25 per barrel. The potatoes were sold on the market by the last carrier at $2.00 per barrel, and it is not to be presumed that the consignee agreed to pay $3.25 per barrel if $2.00 was the market price when he bought. The conclusion is irresistible that during the eight days delay in delivery, the market price had fallen from $3.25 to $2.00 per barrel, which caused the consignee to reject the potatoes. The defendant and its connecting carriers were in possession of all the facts as to the time of the arrival of these potatoes, etc., and chose to remain silent and shed no light on the subject.

In view of the established facts and the reasonable inferences to be drawn from them, it cannot be said that the jury were without evidence to support their conclusion that there had been unreasonable delay in the carriage and delivery of the potatoes, and that such delay was the occasion of the consignee's refusal to accept the shipment; nor can it be said that the verdict found was a plain deviation from right and justice.

The only instructions given to the jury were asked for by the railroad company, and, therefore, the verdict could not have been the result of misdirection to its prejudice.

For these reasons the judgment of the circuit court must be reversed, and judgment entered here in favor of the plaintiff for the sum, with interest, found by the verdict rendered on the first trial.

*Reversed.*