### WABASH RY. CO. v. HOLT et al.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 88.

CARRIERS ⟨⇒⟩180(1)—MEASURE OF LIABILITY FOR LOSS OF PROPERTY.

Interstate Commerce Act, § 20, as changed by the Carmack and Cummins Amendments (Comp. St. § 8604a), making the initial carrier of property liable to the lawful holder of the bill of lading for the full actual loss, damage, or injury to the property caused by it, or by any connecting carrier under a through bill of lading, *held* also to govern the liability of such connecting carriers, and a provision of the bill of lading limiting liability to invoice value, which by the statute is made void as to the initial carrier, is also void as to the connecting carriers thereunder.

In Error to the District Court of the United States for the Southern District of New York.

Action by George C. Holt and Benjamin B. Odell, receivers of the Ætna Explosives Company, against the Wabash Railway Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Plaintiffs below are the receivers of a corporation, which had a contract with another concern for the sale and delivery to it of sulphuric acid. The contract was to supply the requirements of the corporation represented by the receivers over a term of years and up to a given amount, but the price re-

mained the same during the life of the contract. Some years after the date of contract a shipment was made thereunder from a point in Illinois to one in Indiana, and so routed that the initial carrier was the New York Central Railroad, and a connecting carrier the defendant herein—the Wabash Railway.

The goods were lost under circumstances admittedly creating liability on the part of the Wabash, and the question involved herein is whether the amount to be paid by the Wabash shall be the invoice value of the acid or the market value of the same. Owing to the rise in price at and during the war with Germany, the invoice value, or the amount under the contract aforesaid to be paid for the acid was but $467.98, whereas the market value at the time and place of shipment and of loss was $3,034.

On stipulated facts the matter was submitted to the court below, which ordered judgment for the market value, whereupon defendant took this writ.

Jay Noble Emley, of New York City, for plaintiff in error.

Winthrop & Stimson, of New York City (George Roberts and Edward E. Miller, both of New York City, of counsel), for defendants in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). This case depends on the construction of section 20 of the "Act to Regulate Commerce," as changed by the so-called Carmack and Cummins Amendments. The statute as it stands respecting this litigation is section 8604a, U. S. Comp. Stat. 1916.

The bill of lading in evidence, issued by the initial carrier, declares that:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the * * * bona fide invoice price * * * to the consignee," viz. in this instance, $467.98.

This bill having been issued by the New York Central, it is admitted that under the Carmack Amendment that railroad might have been successfully sued for the damage done by its connecting carrier, the Wabash; and further it is admitted that, if so sued, it would have been liable under the Cummins Amendment for the market value of the goods lost, anything in the bill of lading to the contrary notwithstanding.

But it is said that section 20 as amended puts this last new burden upon the initial carrier only, in that it specifically requires "such carrier" (i. e., the one first receiving the goods) to answer for the miscarriage of a connecting railroad to an amount theretofore usually excluded by stipulations, such as the one above quoted.

Nowhere in the amended section are the burdens of the initial carrier expressly extended to or imposed upon connecting carriers, except as the company "issuing such * * * bill of lading" is given the right to recover over from the connecting road inflicting the injury, any amount "it [the initial carrier] may be required to pay" to the holder of the bill of lading.

The result of plaintiff in error's contention is that, in suits against other than the receiving carrier for lost or injured freight, the Cummins Amendment has no effect at all; and the freight owner must perhaps cross the continent to get a full recovery, although the carrier actually inflicting the injury is at his door.

It is not deniable, that a good verbal argument can be and has been made in support of this result. The amended statute is something of a patchwork, and the plain intention of Congress not well expressed in detail. Yet we feel assured that the entire section has been so read by the Supreme Court as to relieve us of much labor.

The contract for carriage over the lines of connecting carriers, however numerous, is evidenced by one bill of lading, issued as in this case by the receiving carrier. That bill "governs the entire transportation and fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid" (Georgia, etc., Co. v. Blish, etc., Co., 241 U. S. at page 195, 36 Sup. Ct. at page 543, 60 L. Ed. 948), and each participating carrier is liable according to the "applicable valid terms of the original bill" (Missouri, etc., Co. v. Ward, 244 U. S. at page 387, 37 Sup. Ct. at page 619, 61 L. Ed. 1213).

The test of validity is to ascertain what the statute permitted the initial carrier to do in respect of making the bill of lading contract. That carrier cannot, by such a clause as was first above quoted, limit its own liability. Therefore such clause was invalid in toto; it never existed in legal effect.

Thus, and thus only, can uniformity of bill of lading operation over a long line of carriers be secured, and we think this method has been insisted on in the ruling cases cited. Every bill, the moment it is signed, stands purged of all matters forbidden by the statute, including language obnoxious to the Cummins Amendment. If such clause does not in legal effect exist when the bill is signed, it does not exist at all, and the bill is to be read without it.

The judgment below is supported by this construction of the act, and is therefore affirmed, with costs.