# Richmond.

## New York, Philadelphia and Norfolk Railroad Company v. Bundick, Taylor, Corbin-Handy Company.

### March 20, 1924.

1. Appeal and Error—*Petition for Writ of Error—Time of Presentation— Time within which Petition and Record Ought to be Received by the Clerk.*—Section 6355 of the Code of 1919, both before and after the amendment thereof by Acts 1922, page 368, contained a proviso that the time elapsing between the presentation of the petition for a writ of error and the delivery of the record with the petition to the clerk should be excluded from the computation of one year fixed by section 6355 of the Code, or the six months fixed by the amendment. If the petition is presented within the time prescribed by law, it is immaterial how long the judge or court holds the petition and record, that time is not taken into account, and the time fixed by the statute within which the petition and record are to be received by the clerk is regulated by the receipt of the petition and record by the judge or court.

2. Appeal and Error—*Petition for Writ of Error—Time of Presentation— Time within which Petition and Record Ought to be Received by the Clerk—Case at Bar.*—As the law stood (sections 6337 and 6355 of the Code of 1919) when the petition in the instant case was presented to a judge of the Supreme Court of Appeals, the plaintiff in error had one year from December 2, 1921, within which to present his petition. He presented it on June 16, 1922, two days before the amendments to these sections (Acts 1922, pages 45 and 368) became operative, and it was immaterial what time elapsed before the judge granted the petition and delivered the record to the clerk. As the date when the writ was actually granted did not appear, the case was treated as if the writ had been granted and the record and petition had been delivered to the clerk on June 16, 1922. What, if anything, was the effect of the passage of the acts of 1922, pages 45 and 368, after the date of judgment, it was unnecessary to decide.

3. Carriers of Goods—*Loss of Goods—Measure of Damages—Market Value at Place of Destination.*—In the absence of statute, or any agreement of the parties to the contrary, the general rule is that when goods delivered to a carrier for transport are lost in transit,

the carrier is liable for the market value of the goods at the place of destination at the time when the goods should have been delivered, less the freight charges, if they have not already been paid.

4. CARRIERS OF GOODS—*Liability of Carrier for Loss or Damage—Limitation of Liability—Stipulation that Damages shall be Computed on the Basis of the Value of the Property at the Place and Time of Shipment—First Cummin's Amendment (Comp. St., Sec. 8604-a).*—Where a bill of lading for an interstate shipment contains a provision that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment," and it appears from the evidence that the destination value exceeded the value at the place and time of shipment, the shipper is entitled to recover his "full actual loss," and while such clause in a bill of lading would not prevent such a recovery in all cases, it does so where the destination value exceeds that at the place of shipment, and hence to that extent is invalid under the first Cummins amendment (Comp. St., section 8604-a).

5. CARRIERS OF GOODS—*Measure of Damages for Loss—Limitation of Liability—Second Cummins Amendment.*—The second Cummins amendment has no application to a case where there was no stipulated or agreed value of the goods shipped.

6. CARRIERS OF GOODS—*Liability of Carrier for Loss or Damage—Limitation of Liability—Stipulation that Damages shall be Computed on the Basis of the Value of the Property at the Place and Time of Shipment—First Cummins Amendment (Comp. St., Section 8604-a)—Case at Bar.*— In the instant case, an action by a shipper for the loss of a carload of potatoes, the bill of lading provided that the amount of any loss or damage should be computed on the basis of the value of the property at the place and time of shipment.

*Held:* That this clause in the bill of lading was not void *in toto,* but only to the extent that it prevented the shipper from recovering his "full actual loss." In other respects, the contract was one the parties had the right to make, and was not forbidden by law.

7. CARRIERS OF GOODS—*Liability of Carrier for Loss or Damage—Limitation of Liability—Stipulation that Damages shall be Computed on the Basis of the Value of the Property at the Place and Time of Shipment—First Cummins Amendment (Comp. St., Section 8604-a)—Case at Bar.*— In the instant case, an action by a shipper for the loss of a carload of potatoes, the bill of lading provided that the amount of any loss or damage should be computed on the basis of the value of the property at the place and time of shipment. The shipper had sold the potatoes at $10.00 per barrel f. o. b. at the place of shipment, and would have received this sum for them if they had been promptly delivered. This was the "actual loss" sustained by the shipper, and this sum the carrier by the express terms of the bill of lading agreed to pay.

*Held:* That there was nothing in either the Carmack or Cummins amendments to the interstate commerce act (Comp. St., sections 8604-a, 8604-aa) which forbade a carrier to stipulate for the payment to the shipper of the full actual loss sustained. The sale fixed the value at the place and time of shipment, and the price agreed to be paid was the measure of the shipper's actual loss.

8. Carriers of Goods—*Interstate Commerce—Limitation of Liability for Damages—The Cummins Amendments.*—One of the chief objects of the first Cummins amendment was to prevent the carrier from defeating a recovery by the shipper of his full actual loss, by contract, agreement, or otherwise. The second Cummins amendment, however, provided that if there was a declared or agreed value at the time of shipment, this should be the maximum of the shipper's right of recovery.

9. Carriers of Goods—*Interstate Commerce—Liability for Actual Loss—Damage or Injury to the Property—Consequential Loss.*—The right of a shipper to recover his actual loss, as measured by a sale of the property made by him, against a carrier for goods lost in interstate commerce is not affected by the fact that such loss was consequential only and not a damage or injury to the property.

10. Appeal and Error—*Error in Instructions—Where no other Verdict Could have been Found.*—The rulings of the trial court in granting and refusing instructions are immaterial, where the jury could properly have found no other verdict.

11. Appeal and Error—*Error in Instructions—Where no other Verdict Could have been Found.*—Under section 6331 of the Code of 1919 a judgment will not be reversed for error in rulings on the instructions where it plainly appeared from the record and the evidence given at the trial that the parties had had a fair trial on the merits and substantial justice had been reached.

Error to a judgment of the Circuit Court of Accomac county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*George R. Allen* and *Stewart K. Powell,* for the plaintiff in error.

*Warner Ames, S. James Turlington* and *James E. Heath,* for the defendant in error.

Burks, J., delivered the opinion of the court.

[1, 2] There is an application to dismiss the writ of error in this case, as improvidently awarded, in the following language:

"It is submitted that this writ of error should be dismissed. The judgment in this case was entered December 2, 1921. The petition for the writ was presented to one of the judges of the court June 16, 1922. Just when the writ was awarded does not appear, but the record and petition were not received by the clerk *until June 23, 1922.* The supersedeas bond was executed, as we are informed, on the 11th day of July, 1922.

"When the petition for the writ was presented, sections 6337 and 6355, as they appear in the Code of 1919, were in effect. Had they remained in effect just as they were, the plaintiff in error would have had one year from the date of the judgment, or until December 2, 1922, in which to perfect its writ of error.

"But these two sections of the Code did not remain as they were. Section 6337 was amended by an act approved February 17, 1922, and section 6355 by an act approved March 14, 1922. (See Acts 1922, pages 45 and 368.) The legislature adjourned March 20, 1922 (Acts 1922, page 908), and, accordingly, the two acts in question became laws ninety days thereafter, that is to say on the 18th day of June, 1922. (See Code, section 4.)

"Inasmuch as the writ of error had not been perfected on or before June 18, 1922, the act of March 14, 1922, which went into effect on the former date, *made it impossible to perfect it then or thereafter.*"

Section 6355 of the Code, both before and after the amendment thereof, contained a proviso that the time elapsing between the presentation of the petition for the

writ of error and the delivery of the record with the petition to the clerk should be excluded from the computation of one year fixed by section 6355, or of six months fixed by the amendment. If the petition is presented within the time prescribed by law, it is immaterial how long the judge or court holds the petition and record, that time is not taken into account, and the time fixed by the statute within which the petition and record are to be received by the clerk is regulated by the receipt of the petition and record by the judge or court. As the law stood when the petition was presented to a judge of this court, the plaintiff in error had one year from December 2, 1921, within which to present his petition. He presented it June 16, 1922, two days before the amendment became operative, and it is immaterial what time elapsed before the judge granted the petition and delivered the record to the clerk. As the date when the writ was actually granted does not appear, the case will be treated as if the writ had been granted and the record and petition had been delivered to the clerk on June 16, 1922. What, if anything, was the effect of the passage of the acts after the date of the judgment, it is unnecessary to decide. See General Laws Virginia, section 6337, and note. As the question is a purely local one and not likely to arise again, we do not deem it necessary to examine cases from other jurisdictions cited in the briefs. None of the cases cited from this jurisdiction settle the question, nor have they been of material aid to us in arriving at our conclusion. The motion to dismiss will be denied.

In this case a shipper sued the initial carrier for the loss of a carload of white potatoes shipped from Makemie Park, Virginia, to Flint, Michigan, and there was a judgment for the plaintiff for the full amount of its claim. The potatoes were shipped on a bill of lading

"notify J. P. Burroughs," which contained the following clause: "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

The plaintiff in error admits liability, but claims that the measure of damage is the market value of the potatoes at Flint, Michigan, at the time the potatoes should have been delivered there. The potatoes had been sold at $10.00 per barrel f. o. b. Makemie Park, Virginia, and the defendant in error claims that this represented the amount of its "actual loss," and for this latter amount the trial court entered judgment for the defendant in error.

[3] In the absence of statute, or any agreement of the parties to the contrary, the general rule is that when goods delivered to a carrier for transport are lost in transit, the carrier is liable for the market value of the goods at the place of destination at the time when the goods should have been delivered, less the freight charges, if they have not already been paid. 10 C. J., section 606. The plaintiff in error claims that this rule still obtains, and seeks to be relieved from the provision of the bill of lading, and relies upon *Chicago, etc., R. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97, 40 Sup. Ct. 504, 64 L. Ed. 801; *Crutchfield* v. *Hines*, 239 Mass. 84, 131 N. E. 340; and *Wabash Ry. Co.* v. *Holt* (C. C. A.), 263 Fed. 72.

As stated, no question is raised as to the liability of the initial carrier, but it is said that "this rule of destination value as the measure of damages for loss, damage or injury to interstate shipments has been adhered to by the courts in applying the Carmack and Cummins amendments," and the above mentioned cases are cited to support the proposition.

[4] No question is raised as to the effect of the Carmack amendment (Comp. St. § §8604a, 8604aa). Shortly after the enactment of the first Cummins amendment (Comp. St. §8604a), the Interstate Commerce Commission rendered an opinion construing the amendment, in which it said:

"The Cummins amendment clearly places upon the carriers liability for the full actual loss, damage, or injury to the property transported which is caused by them, and it makes unlawful any limitation of that liability, or of the amount of recovery thereunder, in any receipt, bill of lading, contract, rule, regulation, or tariff filed with this Commission, without respect to the manner or form in which such limitation is sought to be made. The loss or damage must, apparently, be either as of the time and place of shipment, time and place of loss or damage, or time and place of destination. Where rates are lawfully dependent upon declared values, the property and the rates are classified according to the character of the property, of which the value of the property may constitute an element, and such classification is necessarily as of the time and place of shipment. It is therefore believed that the liability of the carrier may be limited to the full value of the property so classified and established as of the time and place of shipment."

Afterwards the question came before the Supreme Court of the United States on a shipment of grain from

Montana to Nebraska on a bill of lading containing the provision that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under this bill of lading, including freight charges, if paid," but the destination value exceeded the value at the place and time of shipment. The court held that the plaintiff was entitled to recover his "full actual loss," and that while the clause in the bill of lading did not necessarily prevent such a recovery in all cases, "in *this* case it does prevent a recovery of the *full actual loss*, if it is enforced" (italics supplied), and hence to that extent the limiting clause was invalid. *Chicago, &c. R. Co.* v. *McCaull-Dinsmore Co., supra.* An extract from the opinion is given in the margin to show the provisions of the amendment and the reasons for the court's conclusions.[1]

[1] "The Cummins amendment act of March 4, 1915, chapter 176, 38 Stat. 1196 (Comp. Stat. sec. 8604-a), provides that the carriers affected by the act shall issue a bill of lading and shall be liable to the lawful holder of it 'for any loss, damage, or injury to such property * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier * * * from the liability hereby imposed,' and further that the carrier 'shall be liable * * * for the full actual loss, damage, or injury * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void.' Before the passage of this amendment the Interstate Commerce Commission had upheld the clause in the bill of lading as in no way limiting the carriers' liability to less than the value of the goods, but merely offering the most convenient way of finding the value. *Shaffer* v. *Chicago, Rock Island & Pacific Ry. Co.*, 21 I. C. C. 8, 12. In a subsequent report upon the amendment it considered that the clause was still valid and not forbidden by the law, 33 I. C. C. 682, 693. The argument for the petitioner suggests that courts are bound by the Commission's determination that the rule is a reasonable one. But the question is of the meaning of a statute and upon that, of course, the courts must decide for themselves.

In *Crutchfield* v. *Hines*, 239 Mass. 84, 131 N. E. 340, recovery was sought for the loss of a carload of pears destroyed in a wreck, which had been shipped under a bill of lading containing the same clause as in the *McCaull Case*. It was agreed that the defendant was negligent, that the pears at the time and place of shipment were of the value of $969.85, and had depreciated by ripening in transit until at the time of the wreck they were of the value of $500.00, and the court sustained a judgment of the trial court in favor of the plaintiff for $500.00, that being the full actual loss of the plaintiff. The court held that the second Cummins amendment had no application to the facts of the case. On the subject of the first Cummins amendment, the court said: "Under the first Cummins amendment, *supra*, as construed in *Chicago, Milwaukee & St. Paul Ry.* v. *McCaull-Dinsmore Co.*, *supra*, the shipper was permitted to recover the full actual loss, notwithstanding the stipulation in the uniform bill of lading that 'the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the time and place of shipment * * including freight charges, if paid.' It is plain that under this act the stipulated value might measure the actual loss value or be greater or less than the full actual loss."

"We appreciate the convenience of the stipulation in the bill of lading and the arguments urged in its favor. We understand that it does not necessarily prevent a recovery of the full actual loss, and that if the price of wheat had gone down the carrier might have had to pay more under this contract than by the common law rule. But the question is how the contract operates upon this case. In this case it does prevent a recovery of the full actual loss, if it is enforced. The rule of the common law is not an arbitrary fiat, but an embodiment of the plain fact that the actual loss caused by breach of a contract is the loss of what the contractee would have had if the contract had been performed, less the proper deductions, which have been made and are not in question here."

[5] In the instant case there was no stipulated or agreed value of the potatoes, and hence the second Cummins amendment has no application, and need not be quoted.

In *Wabash Ry. Co.* v. *Holt* (C. C. A.), 263 Fed. 72, the shipper was under contract obligation to furnish sulphuric acid at a stated price. "The goods were lost under circumstances admittedly creating liability on the part of the Wabash, and the question involved herein is whether the amount to be paid by the Wabash shall be the invoice value of the acid or the market value of the same. Owing to rise in prices at and during the war with Germany the invoice value of the amount under the contract aforesaid to be paid for the acid was but $467.98, whereas the market value at the time and place of shipment and of loss was $3,034.00." The bill of lading declared that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the * * *bona fide* invoice price * * to the consignee, viz., in this instance $467.98. It was admitted that the initial carrier was liable "for the market value of the goods lost, anything in the bill of lading to the contrary notwithstanding," but it was denied that the connecting carrier was so liable, and this was the chief point in the case. While holding the connecting carrier liable to the same extent as the initial carrier, it was said that the initial "carrier cannot, by such a clause as above quoted, limit its own liability. Therefore, such clause was invalid *in toto;* it never existed in legal effect." The latter clause must have meant as applied to the facts of that case. In the statement of facts quoted above it was said that "the market value at the time and place of shipment and of loss was $3,034.00; and it was admitted that this was the measure of liability of the ini-

tial carrier. No question was raised as to the market value at destination, and it is presumed it was the same as the place of shipment.

Prior to the enactment of the first Cummins amendment (Comp. St. sec. 8604a), the "Interstate Commerce Commission had upheld the clause in the bill of lading as in no way limiting the carriers' liability to less than the value of the goods, but merely offering the most convenient way of finding the value. *Shaffer* v. *Chicago, Rock Island & Pacific Ry. Co.*, 21 I. C. C. 8, 12." *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97, 40 Sup. Ct. 504, 64 L. Ed. 801. The amendment did not forbid the making of contracts to pay the shipper "the full actual loss" sustained by him, but declared that the carrier "shall be liable  *  *  for the full actual loss, damage or injury  *  *  notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made, is hereby declared to be unlawful and void." 21 I. C. C. 8, 12.

[6] The clause in the bill of lading was not void *in toto*, but only to the extent that it prevented the shipper from recovering his "full actual loss." In other respects, the contract was one the parties had the right to make, and was not forbidden by law. *Gulf, etc., R. Co.* v. *Texas Packing Co.*, 244 U. S. 31, 37 Sup. Ct. 487, 61 L. Ed. 970. In this case the court, after stating the general rule on the measure of damages as we have stated it, adds, "the stipulations of these bills of lading changed this rule in the requirement that the invoice price at the place of shipment should be the basis for assessing the damages."

[7] In the instant case, the shipper had sold the potatoes at $10.00 per barrel f. o. b. Makemie Park, Virginia, and this sum he would have received for them if they had been promptly delivered. This was the "actual loss" sustained by the shipper, and this sum the carrier, by the express terms of the bill of lading, agreed to pay. There is nothing in either of the amendments of the interstate commerce act, or in either of the cases cited for the plaintiff in error, that forbids a carrier to stipulate for the payment to the shipper of the full actual loss sustained. The carrier had full knowledge of the character of the goods and of the importance of prompt delivery, and with this knowledge stipulated that the measure of damages, in case of nondelivery, should be "the value of the property (being the *bona fide* invoice price, if any, to the consignee, including freight charges if prepaid) at the place and time of shipment," and this value to the shipper, under the facts of the case, was $10.00 per barrel f. o. b. at Makemie Park, Virginia. This value represents the shipper's actual loss, and we are unable to see any reason why the carrier should not be made to pay it. If there had been no previous sale, the measure of damages would have been fixed by the general rule hereinbefore stated, and the effect of the terms of the bill of lading would have been controlled by the *McCaull Case*, but in the absence of any evidence to the contrary (and there is none), the sale fixed the value at the place and time of shipment, and this value the carrier agreed to pay, and the price agreed to be paid is the measure of the shipper's actual loss. We find nothing in the cases cited for the plaintiff in error which militate against this conclusion.

[8] One of the chief objects of the first Cummins amendment was to prevent the carrier from defeating a recovery by the shipper of his full actual loss, by con-

tract, agreement, or otherwise. The second Cummins amendment, however, provided that if there was a declared or agreed value at the time of shipment, this should be the maximum of the shipper's right of recovery.

[9] Courts have found great difficulty in construing the language of the amendments to the interstate commerce act, and in this case some question is made as to the right of the plaintiff to recover his actual loss, as measured by the sale, because such loss was consequential only and not a damage or injury "to such property," but that question has been settled adversely to the claim of the plaintiff in error. *Norfolk Truckers' Ex.* v. *Norfolk Co.*, 116 Va. 466, 82 S. E. 92; *New York, etc., R. Co.* v. *Chandler*, 129 Va. 695, 106 S. E. 684. The subject of the proper interpretation of the language of these amendments is elaborately discussed in the opinion in *Davis, Director General,* v. *John L. Roper L. Co., ante* p. 377, 122 S. E. 113, handed down to-day.

[10, 11] There are several assignments of error on the ruling of the trial court in granting and refusing instructions, but we are of opinion that the jury could not properly have found any other verdict than the one it did find, and when that is the case such rulings are immaterial. *Southern Ry. Co.* v. *Oliver*, 102 Va. 710, 47 S. E. 862; *Pocahontas Consol. Col. Co.* v. *Hairston*, 117 Va. 118, 83 S. E. 1041. Furthermore, it is provided by section 6331 of the Code that no judgment shall be reversed "for any error committed on the trial where it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached," and that is our conclusion in this case.

The judgment of the trial court will, therefore, be affirmed.

*Affirmed.*