**STATE ex CROTTY v ZANGERLE et**

Ohio Common Pleas, Cuyahoga Co

No 466911. Decided Oct 14, 1937

John J. Tetlow, Cleveland, John J. Sheehan, Cleveland, John J. Kennedy, Cleveland, Wesley Grills, Lorain, Ray T. Miller, Cleveland, and Con C. Miller, Cleveland, for plaintiff, W. A. Crotty.

Frank T. Cullitan, Prosecuting Attorney, Cleveland, Saul S. Danceau, Asst. Prosecuting Attorney, Cleveland, Douglas F. Schofield, Alfred Cium, Director of Law, Cleveland, Henry S. Brainard, Asst. Director of Law, Cleveland, and Charles W. White, Asst. Director of Law, Cleveland, for defendants.

Joseph J. Ogrin, Cleveland, and Maurice H. Gelfand, Cleveland, amicus curiae.

## OPINION

By JOY SETH HURD, J.

The plaintiff, hereinafter termed the relator, has filed his petition alleging in substance that he is a taxpayer of the County of Cuyahoga and that as such on the 16th day of August, he made a written request upon the prosecutor of this county to bring an action restraining the defendant the County Auditor from issuing any orders directed to the defendant the County Treasurer for the refunding or repayment of any interest, penalty or other charge which had been made and collected for the nonpayment of real estate taxes and assessments; that such demand was refused in writing by said county prosecutor and he now brings this action on behalf of himself and all other taxpayers of this county.

The burden of his complaint is that there has been enacted by the legislature of the State of Ohio a certain statute known as §2590-1 GC, familiarly called the Ogrin Act, providing for the remission, abrogation and refunding of all interest, taxes and penalties paid by any person since June 20, 1930, and up to January 1st, 1937.

The relator complains that this statute is not a valid enactment in that it is violative of the provisions of the constitution of the State of Ohio and the Constitution of the United States.

The relator further complains that said sections do not provide any grant or authority for the levying of any tax or for the raising of any money to meet the requirements of said Act.

The relator also complains that the payments made by any person of penalties, interest or other charges for non-payment when due of any real estate taxes or assessments were voluntary and that all rights between the parties were established and fixed and all claims thereunder determined at the time of said payment.

To this petition defendants the County Auditor and County Treasurer have filed an answer and cross-petition admitting all of the factual allegations of the petition and admitting their intention to comply with the provisions of said act unless restrained by this court, but denying that said act is invalid.

By leave of court all of the separate municipalities and townships, political subdivisions of the county were made new parties defendant and in respect of these new parties defendant the defendants the County Auditor and County Treasurer allege in a cross petition that all such taxes, interest, penalties and other charges heretofore paid by taxpayers during the period between June 20th, 1930, and January 1st, 1937, have been distributed to such political subdivisions and if the refunds provided for by such act are made by them that the necessary funds therefor must be provided by said various political subdivisions in the amounts heretofore paid to them or withheld by the auditor and treasurer from any sums hereafter coming due to them by way of tax distribution and that therefore such subdivisions are necessary parties to this cause.

One Douglas F. Schofield as trustee of the estate of Levi T. Schofield, deceased, having obtained leave of court to be made a new party defendant as a taxpayer, has filed his answer and cross petition denying the claims and complaints made by the relator herein as to the invalidity of said statute. After a hearing at which the parties came and presented evidence and argued the case orally, leave was requested to file briefs and counsel have filed elaborate and extensive briefs supporting their respective contentions.

In addition to the briefs filed by counsel for the parties litigant briefs have been filed amici curiae by counsel for various persons interested in support of the validity of the enactment.

In addition a stipulation has been filed which reads as follows:

"It is hereby agreed and stipulated by and between the parties that all penalties and interest paid to the County Treasurer for delinquent real estate taxes in past years have been distributed to the State of Ohio and the separate political sub-divisions throughout Cuyahoga County.

"It is further agreed and stipulated that if the Ogrin Bill is declared constitutional the amount of money to be refunded by way of refund of penalties and interest upon past delinquencies in real estate taxes is in an amount between $1,900,000 and $2,000,000."

In approaching a consideration of the questions here involved we are mindful of the fact that it is not the province of the court to consider any questions of policy with respect to this or any other legislation claimed to contravene the Constitution. The people in their wisdom have adopted a Constitution providing for three separate and distinct divisions of governmental functions, the executive, the legislative and the judicial. Each separate branch is supreme in its own sphere of activity, subservient only to the will of the people as expressed in the Constitution and the laws thereunder. While each must be independent in the exercise of its own functions and prerogatives, each must respect the rights, functions and prerogatives of the other branches of government. Therefore when a question such as this comes before the court for final determination it is not the duty of the court to question the wisdom of the legislation but rather to determine if it is in conformity with the provisions of the Constitution. If it is so in conformity the legislation must stand. If it contravenes the Constitution the legislation must fail and the Constitution prevail.

However, the courts will not declare a statute void merely upon a suggestion of conflict with the Constitution. Our Ohio Supreme Court has said:

"It is a principle firmly imbedded in our jurisprudence that it must be a clear infraction of the Constitution which will authorize the courts to intervene and overthrow an Act of the Legislature."

**Railway Co. v Wells, 65 Oh St, page 315.**

The section of the Code under consideration reads as follows:

"Sec 2590-1 GC. Refund of penalties, etc., remitted or abrogated.—Whenever any penalty, interest or other charge for non-payment when due of any real estate tax and/or assessment is paid by any person, firm or corporation charged with or legally authorized to pay same, which said penalty, interest or other charge after such payment is or has been remitted or abrogated, conditionally or otherwise, by act of the legislature, or otherwise, any such penalty, interest or other charge paid since the 20th day of June, 1930, and prior to January 1st, 1937, is hereby expressly remitted and abrogated, on application to the county auditor by such person, firm or corporation on or before the first day of January, 1940, such penalty, interest and charges so paid shall be refunded to such person firm or corporation on the order of the county auditor directed to the county treasurer. (118 v. H. 503, §1; 116 V. 468, §1. Eff. Aug. 7, 1937)."

The question arising under this section of the Constitution is as to whether or not this statute is retroactive. It is clear to us that the legislaure by the enactment of the legislation under consideration attempts to reach into the past, as far back as the 20th day of June, 1930, and extending therefrom to the 1st day of January, 1937.

After very careful consideration we are of the opinion that this enactment is a clear infraction of **Article II, §28 of the Constitution of Ohio,** providing that—

"The General Assembly shall have no power to pass retroactive laws."

It must be emphasized, we believe, in any consideration of this case that not only the taxes, the assessments, the interest, the penalties and other charges thereon have been paid, but according to the stipulation filed herein **distribution thereof has been made to the respective political subdivisions of the county.** We think further it should be noted that the interest, penalties and other charges in connection with these taxes were paid voluntarily and in pursuance of existing laws.

We reach the conclusion therefore that this enactment is a device of the legislature to remit obligations of the past. It looks to the past and not to the future. Inasmuch as it imposes new burdens, liabilities and obligations upon the County of Cuyahoga and the taxpayers thereof including the relator herein which did not

exist a. .he time of its enactment and inasm..u as it takes away or impairs vested rights required under laws existing at the time of its passage and all of this with respect to transactions or considerations already past, it must be deemed retroactive and therefore violative of the Constitution.

For this conclusion we find ample authority in the case of **Commissioners v Rosche Bros.** decided by the Supreme Court of Ohio in the January Term, 1893, **50 Oh St 503.** This case contains a state of facts identical in many respects to the facts of the instant case, and a conclusion identical with that herein reached. In this case the court had before it for consideration an act of the legislature to provide for refunding all taxes erroneously paid and the court held that insofar as it imposed an obligation on the county of Hamilton on account of these past transactions, the act of the legislature was retroactive and in conflict with §28 **of Article II, of the Constitution of this state.** The language of the decision of the court, rendered by Bradbury, J., is so apt in many respects in its application to the facts of the instant case that a quotation of certain excerpts thereof must prove enlightening in a consideration of the matter now before us. The excerpts follow:

"However steadily we may keep in mind the general rule, that statutes should be construed to operate prospectively only, when susceptible of that construction, there still remains little, if any, doubt, that the legislature intended the above quoted statute to operate retrospectively; * * * At least the language of the statute is explicable upon no other hypothesis than that it was intended to operate upon past transactions. * * * The words of the statute uniformly refer to the past in prescribing the circumstances that are to set it in operation. * * * The statute therefore should be held to be retroactive and apply to the state of facts that constitutes the cause of action of the defendant in error.

"However, every statute that is designed to act retrospectively is not retroactive within the terms of §28 **of Article II of the Constitution of 1851,** which forbids the General Assembly of this State to pass retroactive laws; whether a statute falls within the prohibition of this provision of the Constitution depends upon the character of the relief that it provides. If it creates a new right rather than affords a new remedy to enforce an existing right, it is prohibited by this clause of the Constitution of this State."

Judge Story defines a retrospective or retroactive law as follows:

"'Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past must be deemed retrospective.'

"The Society, etc. v Wheeler, 2 Gall. 104-139.

"This definition was approved by this court in **Rairden et v Holden, 15 Oh St 207.** It was also adopted by the Supreme Court of the United States in Sturges v Carter, 114 U. S. 511.

"The statute under consideration when tested by these principles operates retroactively in its application to the claim of defendants in error. The last payment of the taxes that they sought to recover was made more than nine years before the law was passed. The property had been listed and the taxes paid voluntarily. They interposed no objection or protest to the payment nor was any threat or offer made by the County Treasurer to compel payment by summary or other processes provided by statute for that purpose. For money paid under these circumstances the well settled law of this state as it stood then and remained up to the time of the passing of this statute forbids a recovery. **Mays v Cincinnati, 1 Oh St 268; Marietta v Slocum, 6 Oh St 471; Wilson v Pelton, 40 Oh St 306; Whitbeck, Treas. v Minch, 48 Oh St 210** * * *. Therefore when the defendants in error voluntarily though erroneously listed their property and voluntarily paid the taxes assessed upon it, neither by statute nor by any principle of the common law as administered in Ohio was an obligation imposed upon the county of Hamilton to refund the money received. If such an obligation had existed the forms of procedure then provided by our system of practice were ample to afford complete relief. The obstacle in the way of the defendants in error was not inadequate methods of procedure, but the absence of a law vesting in them a right of recovery. This want the statute under consideration attempted to supply."

It will be noted that in the above cited and quoted case, the legislature attempted by statute to remit and refund taxes erroneously paid, whereas in the instant case

the interest, penalties and other charges were properly paid in pursuance of existing law. If an act to recover tax moneys **erroneously paid** in respect to past transactions is held retroactive, then the conclusion that an act to recover tax moneys **properly and lawfully paid** in respect of past transactions is likewise retroactive, seems to us to be irrefutable.

It is true that this decision dealt with an act of the legislature with respect to taxes as such, whereas the act under consideration refers to interest on taxes, penalties and other charges accruing according to law because of their non-payment when due. However, as we view it, this is a distinction without a difference for we believe the principle to be the same when the interest, penalties and other charges have been paid as a part of the tax liability according to law and when according to law the moneys derived therefrom have been paid into the common fund derived from taxation and distributed to the respective governmental subdivisions according to law.

In other words these charges lawfully and properly paid are proceeds in the hands of the proper officers of the county charged with the collection and distribution of taxes and as such become part of the general funds derived from taxation.

Again we find ample authority for the conclusions herein reached in the decision of our Supreme Court in the case of **State ex v Hunt, 132 Oh St 580.** In that case the court had before it that part of the intangible tax act of Ohio enacted in 1931, giving the tax commission of Ohio power to issue a certificate of immunity from collection of omitted taxes for 1926 to 1930 inclusive upon certain conditions therein set forth.

The language of the court in that case aptly describes the situation we find in this case. On page 580 the court says:

"Obviously it is not an arrangement for the future but a contrivance to remit obligations of the past. It is clearly retroactive and in violation of §28 **of Article II, of the constitution."**

In a very able brief filed by the County Prosecutor as representing the defendants herein it is contended that so far as any political subdivision of the State is concerned there cannot be any vested right and therefore the claim is made that vested rights are not affected by the legislation under consideration. In support of

this contention the case of **Cleveland v Zangerle, Auditor and others, 127 Oh St 91** is cited.

Upon a careful consideration of this case we reach the conclusion that this decision of our Supreme Court is not repugnant to the conclusion reached by us in the instant case but rather consonant with it. In the case of Cleveland v Zangerle, supra, the court say:

"No governmental subdivision of the State has any vested right, **at least until distribution is made,** in any taxes levied and in the process of collection. **Until such distribution is made** the legislature of Ohio is fully competent to divert the proceeds among those subdivisions as it deems best to meet the emergencies which it finds to exist.

"So far as any political subdivision of the State is concerned there can be no vested right although a case might arise where private interests might intervene and be so affected as to give rise to a vested interest. The provisions of Am. Sub. Senate Bill No. 239, so far as they relate to the **future** distribution of the proceeds of the taxes are not retroactive but **prospective** in character and are not violative of §28 **of Article II of the Constitution."**

This case should be distinguished from the instant case in one very important respect, namely, that distribution has been made to the political subdivisions. The legislation in that case was prospective in character, whereas the legislation in the instant case is retrospective in character.

Further it would appear to us that this is a case where private interests, namely the interests of the relator and other taxpayers of the county have intervened giving rise to a vested interest in the relator and individual taxpayers in the fruits and benefits of the proceeds of the tax distribution.

At the expense of some repetition, therefore, we say in view of the rationale of the foregoing decisions it would appear to us that the Ogrin Act so-called imposes new obligations, liabilities and burdens as to past transactions, the rights of the parties having been fixed in respect thereto as far back as June 30, 1930. The transactions when completed were valid and in pursuance of law. The county no longer has the money derived from these transactions but in pursuance of law the money has long since been distributed to the governmental subdivisions who have, we must assume,

used the same for proper governmental purposes.

New burdens and obligations are placed upon the county and the taxpayers thereof which were not in existence at the time of the passage and enactment of this legislation. The act itself does not provide the means or method for raising the funds of nearly two million dollars to repay the delinquent taxpayers who are the beneficiaries under the act. We can only conclude, therefore, that the money to make these refunds must necessarily come from the further taxation of all the taxpayers of the county  These burdens are placed upon the relator and others in respect of these past transactions and we can reach no other conclusion but that the act in question is retroactive and repugnant to the Constitution.

We reach the conclusion that this enactment contravenes the Constitution in another respect. In our opinion it violates §2, **Article I, of the Constitution** in that it does not grant equal protection and benefit of the law to all citizens. During the six and one half year period from June. 1930, to January 1st, 1937, those taxpayers who met their just obligations, in respect of the payment of taxes, were entitled to have all other persons charged with the same obligations pay their taxes as well, and if they failed so to do to pay the interest and penalties and other charges in pursuance of existing law.

If a remission of interest, taxes, penalties and other charges and the refunder thereof is made at this time to such taxpayers, can it be said that the taxpayer who met his obligations is on the same footing as the taxpayer to whom it is now proposed such interest, penalties and other charges shall be repaid? We think not.

It would appear that payment at this time is in the nature of a mere gratuity to such persons. It is proposed to grant them immunities, privileges and preferences not allowed to other taxpayers similarly situated. There is no legal obligation owed in respect of the persons who paid this money. We can conceive of no moral obligation existing in their favor and now to rescind these past transactions valid at the time of consummation at the expense of all the taxpayers seems to us to deny the relator and other taxpayers similarly situated the equal protection of the laws.

Again referring to the case of State ex Hostetter v Hunt, supra, and in respect of this proposition we find that paragraph 1 of the syllabus is as follows:

"A statute which confers special benefits upon delinquent taxpayers not equally available to non-delinquent taxpayers violates §II of Article I of the Constitution of Ohio, and it is therefore void and of no effect."

In that case the court cites with approval the case of State ex Matteson v Luecke, 194 Minn. 246, the second paragraph of the syllabus is as follows:

"This statute in classifying taxpayers into two classes those who pay promptly and those who do not and in allowing a remission of a discount to the latter, held to violate that clause of Article 9, §I of the Minnesota Constitution which requires taxes to be. uniform upon the same class of subjects. Such classification as is here attempted is unreasonable and arbitrary, there being no essential difference of nature or circumstances between the two classes. In determining the reasonableness of a classification of taxable subjects the court may consider the practical effect the classification is bound to have on business and organized society and hence will consider the fact that this statute encourages voluntary tax delinquencies."

While again this case refers to taxes alone without making reference to interest, penalties and other charges accruing for non-payment of said taxes when due as heretofore stated these interests, penalties and other charges having been paid with the taxes according to law and lumped together in a common fund and distributed to the various political subdivisions entitled thereto without respect to whether or not in a given case part of the money so paid was interest or taxes or a penalty for the non-payment of taxes, the principle involved is precisely the same.

As stated by the Minnesota Supreme Court we cannot shut our eyes to the fact that such a procedure encourages voluntary tax delinquencies. We may also consider the fact that such a procedure results in an imposition of a burden of approximately $2,000,000 upon all the taxpayers of this county including those who paid their taxes when due in order to grant a preference now in favor of those who did not pay their taxes when due.

In conclusion therefore in our opinion this enactment is violative of the Consti-

tution of the State of Ohio in that it is retroactive and repugnant to **Article II, §28, of the Constitution of the State of Ohio**, that it is repugnant to **Article I, §2 of the Constitution** in that it does not grant equal protection and benefit of the laws to all citizens; and likewise, therefore, is repugnant to §I, of Article 14, of the Amendments to the Constitution of the United States, for the same reason.

Entertaining these views the injunction is granted as prayed for. O. S. J.